### CAMPBELL v. LANCASTER et al. (No. 2046.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 30, 1919.)

MASTER AND SERVANT ⚍302(3) — TORT OF SERVANT—LIABILITY OF MASTER.

If defendant railway's guard, who had authority to detain persons going into and out of yards inclosing shop grounds of defendant railway, wrongfully detained and shot plaintiff, defendant's employé, defendant would be liable, although the particular act and detention was unauthorized.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by A. J. Campbell against J. L. Lancaster and another, receivers. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

The shops and shop grounds of the Texas & Pacific Railway at Marshall, Tex., are fenced, and a guard armed with a pistol is kept at each gate in the fence. The circumstances all show that for several years there had been a number of incendiary fires in the shops, and a great deal of valuable property stolen by outsiders. To stop these depredations the company employed a number of guards, who were authorized to prevent persons from entering or leaving the shop grounds, trespassing, theft, and other undesirable conduct. The appellant and John Green, both employés, had a personal difficulty during work hours. Fighting was against the rules of the railway company. Appellant's foreman advised him to go at once to town and surrender himself to peace officers. Sam Green, father of the person assaulted, went to Cole, the guard at the south

---

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

gate and told him not to let Campbell pass out. Sam Green then telephoned for the sheriff to come down, and told the watchman, Cole, that the sheriff was coming. When the appellant got to the south gate, which was the proper one to use in going to town, the guard, Cole, stopped him. According to appellant's evidence the following occurred:

"He, the guard, asked me where I was going. I told him I was going home. He said, 'Do you know anything about that fight?' I said, 'No, sir.' He said, 'You stay and wait until the sheriff comes.' I said, 'I am going back to the shop to get my clothes, and you can go with me.' He said, 'No.' I started off, and he shot me."

Sam Green stated that the appellant started to run after the guard detained him, and then the guard shot him. That the guard shot the appellant on the premises of the company is not a contested point.

The suit was by the appellant to recover damages for the injury. The defendants pleaded that the injury was not inflicted in the course of employment of the guard. The case was tried on special issues, and upon the findings of the jury the court entered judgment for the defendants. The appellant insists by assignments of error that findings Nos. 2, 3, and 4 are contrary to the evidence.

T. W. Davidson, of Marshall, for appellant.

F. H. Prendergast and Brown & Hall, all of Marshall, for appellees.

LEVY, J. (after stating the facts as above). The jury decided that the guard had authority to detain persons going into and out of the yards of the defendants. Assuming this finding to be true, then if the guard, Cole, wrongfully detained and shot, and caused injury to, the appellant, the defendants would be liable, although the particular act of detention was unauthorized. Rucker v. Barker, 151 S. W. 872; Railway Co. v. Parsons, 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857; Portland Cement Co. v. Reitzer, 135 S. W. 241. And it appears from the evidence that the guard shot the appellant solely for the purpose of compelling him to stay under his detention, and not escape from his custody. It conclusively appears that the guard at the gate was not a peace officer clothed with authority as such to arrest and detain the appellant, and the detention and consequent shooting was, in the circumstance, it is concluded, in virtue of the position of guard. Green's appeal to Cole to act and detain the appellant at the gate for the offense of assaulting was referable entirely to Cole's position as guard at the gate.

The second and third findings are merely mixed questions of fact and law; but finding of fact No. 4, that no damage resulted to appellant, is contrary to the evidence, and should, we conclude, be set aside. The fact that appellant was shot and seriously injured is not a contested point in evidence. This ruling necessitates a reversal of the judgment.

Judgment reversed, and the cause remanded.